**Robert T. MOSHER, and Mary Lou Mosher, his wife**

v.

**SOUTHRIDGE ASSOCIATES, INC.**

**Civ. A. No. 82–210 ERIE.**

United States District Court, W.D. Pennsylvania.

Dec. 1, 1982.

See also D.C., 552 F.Supp. 1231.

Eugene J. Brew, Jr., Erie, Pa., for plaintiffs.

Richard A. Bird, pro se.

Richard W. Perhacs, Erie, Pa., for defendant.

OPINION

WEBER, District Judge.

This matter is before the court on defendant's motion to dismiss plaintiffs' amended complaint.

This dispute arose from an aborted transaction involving the sale of a condominium located in South Florida to the plaintiffs. Plaintiffs allege that the defendant entered into an agreement to construct and sell a condominium in exchange for a down payment of $7,290. The Agreement For Sale was contingent upon the plaintiffs' ability to obtain financing and the defendant agreed to assist in making mortgage financing available to the buyer. When plaintiffs were unable to obtain financing, the defendant exercised an option to provide the alternate mortgage financing themselves. The arrangement took the form of a balloon mortgage with incremental payments of $843 over five years capped by a final payment of $63,855, due and payable one month after the final installment. It is the

nature of this financing arrangement that prompted this lawsuit.

On October 12, 1982, plaintiffs filed an Amended Complaint in three counts seeking return of its down payment with interest and costs. Plaintiffs allege, first, a violation of the Interstate Land Sales Act based on defendant's failure to disclose a material term or condition of the Agreement For Sale, namely, the alternate mortgage financing arrangement (Count I); second, a violation of various provisions of the Securities Act of 1933 by virtue of defendant's alleged failure to disclose certain material facts concerning the balloon-nature of the financing arrangement (Count II); and third, that defendant knowingly misrepresented the terms of the contract so as to induce the plaintiffs to enter into the Agreement For Sale and the Supplemental Mortgage Addendum (Count III).

The defendant has challenged the foregoing complaint by its motion to dismiss both the original and the amended complaint. Accordingly, we will consider each of the grounds interposed by the defendant to challenge plaintiffs' complaint. We note that the defendant has attached an exhibit to its motion and the plaintiffs have formed their response by relying on materials outside the pleadings. Accordingly, this court will treat defendants' motion as one for summary judgment. *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

As to Count I we consider defendant's arguments in support of the motion. Defendant first challenges the jurisdiction of this court and cites the Interstate Land Sales Act, which provides:

Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, . . . 15 U.S.C.A. § 1719.

Plaintiffs aver in ¶ 4 of Count I of their amended complaint that the offer or sale of the subject realty occurred in this jurisdiction. We find this averment, in the context of this motion, sufficient to sustain this court's jurisdiction because it raises issues of fact that preclude a dismissal.

The defendant further challenges Count I and asserts that the Interstate Land Sales Act contains an exemption applicable to the transaction between the parties. Section 1702 of the Act provides in relevant part:

*Exemptions*

(a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—. . . (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of *two years*; . . . (emphasis added) 15 U.S.C.A. § 1702.

The Agreement for Sale executed by the parties on August 5, 1981 provides at ¶ 6 of the section entitled *Construction* (page 3 of the agreement) the following:

Notwithstanding the foregoing, in accordance with the Interstate Land Sales Full Disclosure Act (sic) and the Florida Uniform Sales Practices Law, the Developer acknowledges its unconditional obligation to complete and deliver the Unit to Buyer within not more than *twenty-four (24) months* from the execution of this Agreement. (emphasis added).

The requirement that completion of the unit was to be made within two years by the terms of the agreement, according to the defendant, takes this case out of the Interstate Land Sales Act. The defendant argues that this count fails to state a claim upon which relief can be granted because the transaction between plaintiffs and defendant which underlies this suit is exempt from the application of the Act.

Plaintiffs' first response is that the exemption provisions of Section 1702 are not self-executing but, rather, must be approved by the Secretary of Housing and

Urban Development. Plaintiff relies on section 1702(c). We cannot adopt plaintiffs' interpretation of the legislative scheme attending the inclusion of subsection (c) in Section 1702. This subsection provides:

(c) The Secretary may from time to time, pursuant to rules and regulations issued by him, exempt from any of the provisions of this chapter any subdivision or any lots in a subdivision, if he finds that the enforcement of this chapter with respect to such subdivision or lots is not necessary in the public interest and for the protection of purchasers by reason of the small amount involved or the limited character of the public offering. 15 U.S.C.A. § 1702(c).

The above language will not support plaintiffs' interpretation that the defendant was required to seek an exemption from the Secretary beforehand. The Secretary's authority to grant exemptions as are necessary "from time to time" is certainly superfluous to the issue of the applicability of the express exemption urged in the instant case. The exemptions mandated by the terms of the statute are not qualified by the authority granted to the Secretary in subsection (c). Furthermore, the opinion in *Happy Investors Group v. Lakeworld Properties, Inc.,* 396 F.Supp. 175 (N.D.Cal.1975), relied upon by the plaintiff, does not disturb this conclusion where the court denied an exemption to a defendant who neither qualified for a statutory exemption nor had applied for an exemption under an available regulation promulgated by HUD. *Id.*

Plaintiffs further contend that other provisions in the Agreement for Sale belie an intent on the part of the defendant to escape the twenty-four month deadline written into the Agreement. Plaintiffs offer the following excerpts which, it contends, demonstrate that this time obligation was conditional:

6. With reference to the estimated time of delivery or closing date, if any, set forth in this Agreement, buyer understands and agrees that the developer can neither imply nor guarantee a firm completion and availability date for the condominium or unit. . . .

. . .In the event the unit has not then been completed, the buyer shall have the option to rescind this transaction and procure return of all deposits made hereunder. . . . "Agreement for Sale" *Construction,* ¶ 6, p. 3.

■ A review of the complete text in paragraph 6 of the *Construction* section of the agreement indicates that the obligation to complete the unit within 24 months is made notwithstanding the first paragraph quoted above. We do not find them inconsistent. The clear language used by the parties indicates that while the date of delivery cannot be agreed upon with precision it must, nevertheless, precede the expiration of twenty-four months from the date of the agreement. The second quoted paragraph is merely a damage provision in the event the defendant failed to meet its time obligation. It cannot be read so as to render the obligation conditional against the very terms of its expression in the agreement. Under Pennsylvania law, the interpretation of a contract and the intent of contracting parties is exclusively determined from the written instrument if its words are clear and unambiguous. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979). The court is required to consider the writings in order to discern and give legal effect to the reasonable expectations induced by the promises made by the parties. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 468 F.Supp. 656 (W.D.Pa. 1979).

■ With this in mind it is clear from the terms of the agreement that completion and delivery was to be performed within 24 months. Accordingly, the agreement between the parties evidences a qualifying exemption to the Interstate Land Sales Act.

Finally, plaintiff argues that even if the defendant is found to be exempt from the provisions of the Act, this court is not deprived of jurisdiction. Plaintiffs contend that an exemption pertains only to the filing requirements of the Act and that this court is still able to assume jurisdiction to hear a claim against the defendants under

the Act. We cannot agree. The language of Section 1702 states that should a sale or lease be exempt under the Act, as we have so found, "this chapter shall not apply." Accordingly, Count I of plaintiffs' complaint will be dismissed.

■ Count II of plaintiffs' amended complaint alleges violations of Sections 77e, 77g, 77j and 77k of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq. This count turns on a determination of whether the agreement between the parties involved the sale of a security within the meaning of the Securities Act.

Section 77b(1) of the Act which defines a security provides as follows:

> The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. (emphasis supplied). 15 U.S.C.A. § 77b.

The defendant contends that the transaction between the plaintiffs and defendant constituted nothing more than a real estate transaction and did not involve an "investment contract" within the meaning of the Act. Plaintiff for its part has stated in conclusory fashion that land purchase contracts for investment purposes are held to be securities under the Securities Act. Plaintiffs aver that they purchased the unit for profit and intended to make a profit and whether, in fact, a profit was made depended solely on the efforts of another, namely, the defendant.

The transaction between the parties most closely resembles an "investment contract" as listed in the above definition of a security. The Supreme Court in *Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), considered the definition of an "investment contract", and stated:

> . . . [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. 328 U.S. at 298, 299, 66 S.Ct. at 1102, 1103.

Arguably, the transaction between plaintiffs and defendant might be considered a common enterprise to the extent that it involves the efforts of both parties to accomplish a sale of real estate. It is less clear that it is a common enterprise of the type discussed by the court in *Howey* where the motivation of the parties sharing in the enterprise was substantially identical vis a vis their contributions and the object of the enterprise. And while plaintiff may have hoped that his investment might prove profitable, this investment is distinct from a venture entered into for the exclusive or primary purpose of turning a profit. The profit inuring to the plaintiff, moreover, would be a profit by appreciation earned through the retention of the real estate. A profit is certainly not earned through the efforts of a third party when money is paid out to that party as consideration for an exchange of services and real estate. Plaintiffs and defendant were simply engaged in efforts to make the best deal possible for themselves.

For plaintiffs to sustain an action under the Securities Act and to survive a motion for summary judgment, it must be apparent from the complaint and supporting material that the transaction involves the sale of a security. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Plaintiffs have made allegations that this transaction constitutes

the sale of a security but provide no basis for that contention.

Defendant has offered evidence that the condominium would be used primarily for plaintiffs' occupancy. Plaintiffs have offered no evidence to dispute this. Several courts have held that where the purchaser is activated by a "desire to use or consume the item purchased" then the transaction cannot be regarded as an investment contract since the investment could not be said to be managed through the efforts of others. *See* 421 U.S. at 852, 853, 95 S.Ct. at 2060 (1975); *Fogel v. Sellamerica, Ltd.,* 445 F.Supp. 1269 (S.D.N.Y.1978). Furthermore, the expectation of appreciation over time is insufficient to deem a transaction an investment contract. *Joyce v. Ritchie Tower Properties,* 417 F.Supp. 53 (N.D.Ill.1976).

Wherefore, Count II of plaintiffs' complaint will be dismissed. Insomuch as Count III of plaintiffs' complaint is made pendent to its federal claim under Counts I and II, it too will be dismissed. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).