Bruce E. WINTER, Michael Arbetter, and Gary Stein, etc., et al., Plaintiffs,

v.

HOLLINGSWORTH PROPERTIES INC., etc., et al., Defendants.

No. 83–8258–CIV–JAG.

United States District Court, S.D. Florida, N.D.

May 18, 1984.

Richard S. Racklin, Payton & Racklin, Miami, Fla., for plaintiffs.

James L.S. Bowdish, Crary, Buchanan, Bowdish & Bovie, Stuart, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE is before the Court upon the Defendants' Motion for Final Summary Judgment against the Plaintiffs, Michael Arbetter, Bruce E. Winter and Gary Stein, general partners of, and doing business as Americor Realty Associates, a Florida general partnership. Rule 56, Federal Rules of Civil Procedure. The Court has considered the record and heard oral argument by counsel.

This case arises under a Purchase Agreement for Unit B2–932 and B2–934, of Island Dunes Condominium A, executed by the plaintiffs on July 2, 1981; and accepted on behalf of the developer on July 8, 1981.

Pursuant to the terms of the Purchase Agreement between plaintiffs and defendants, plaintiffs were obligated to place an additional deposit with the Escrow Agent at the time the condominium building was "topped out". Plaintiffs did not make this deposit, were given notice and opportunity to cure the default, and failed to do so. Plaintiffs were then notified of the forfei-

ture of their deposits on or about October 25, 1982.

On April 25, 1983, plaintiffs made a demand for revocation of the contract and return of the deposits pursuant to the Interstate Land Sales Act (ILSA Title 15 U.S.C. § 1701 et seq.) The defendants denied the applicability of ILSA and refused to honor plaintiffs request for revocation.

The defendants are still in possession of the units contracted for by the plaintiffs and allege that they are willing and able to meet their obligations pursuant to the Purchase Agreement by delivery of said units.

Plaintiffs filed this action on May 13, 1983 seeking revocation of the contract, costs and attorneys fees. The plaintiffs contend that the defendants have violated the Interstate Land Sales Act by failing to provide the purchaser with a property report in advance of his or her signing the contract. Title 15 U.S.C. § 1703(c) provides that if the developer fails to furnish this report prior to the signing of the contract the contract may be revoked at the option of the purchaser within two years of the date of signing.

There are no disputed facts in this case. The legal issue before the Court is whether the instant transaction falls within the Interstate Land Sales Act.

Section 1404(a)(1) of the ILSA imposes registration and disclosure requirements on developers ".. with respect to the sale ... of any lots .." 15 U.S.C. § 1703(a)(1).

This Court finds that the Interstate Land Sales Act does *not* apply to the transaction in this cause since the Act only applies to "sales ... of any lots." A condominium unit when completed is not a "lot" within the meaning of the Interstate Land Sales Act.

Congress imposed the Act's requirements only "... with respect to the sale ... of lots" 15 U.S.C. § 1703(a)(1). The Act does not define "lot". The regulations, at § 1701.1, define "lot" as "... any portion, piece, division, unit or individual interest in land ... if the interest includes the right to the exclusive use of a specific portion of the land." 24 CFR § 1710.1 (1981). The office of Interstate Land Sales Registration (OILSR) (established by 24 CFR 1700.20 to administer ILSA), issued an Advisory Opinion, No. 1710.1(k), (August 20, 1972), which opinion was adopted by the Delaware Supreme Court in *Nargiz v. Henlopen Developers*, 380 A.2d 1361 (Del. 1977).

OILSR takes the position that "condominium unit" is included within the definition of "lots". In a 1972 Advisory Opinion, OILSR stated:

> We agree that the key term is 'lots' in determining whether the sale of a condominium unit can be equated with the sale of a lot in the subdivision within the meaning of the Act. We do not, however, agree that the concepts and characteristics of a lot and a condominium unit are mutually exclusive and that, therefore, a 'unit' in a condominium cannot be considered a 'lot'.

OILSR Exemption Advisory Opinion, No. 1710.1(k) at p. 5 (August 20, 1972).

Congress enacted ILSA in response to wholesale fraud on unsophisticated individuals by unscrupulous promoters. The promoters offered cheap parcels of land in subdivisions that were represented as suitable for home building. Often the buyers lived in states other than the state where the land was located and hence were unable to inspect it. The lots were usually purchased for investment or for future use as a site for a retirement home. Buyers would close on the deal and either receive a deed or enter an installment contract for deed. Later when the land was inspected, it was found to be uninhabitable or unsuitable for development. At that point, the buyer's remedies were inadequate. Congress described the situation as follows:

> Purchasers living in the same state where the land was located or living out of state were persuaded to buy land that they had never seen by sophisticated sales forces promising that the land (which might be under water or suitable only for grazing purposes) was a good

investment, suitable for homesites and easily resellable.

H.R.Rep. No. 96–154, pps. 30–31, U.S.Code Cong. & Admin.News 1979, pp. 2317, 2346.

It is clear that Congress was concerned with the sale of raw land. No reference is made to condominium units, nor can it reasonably be inferred that Congress ever contemplated that the Act would apply to anything other than the sale of raw land.

In 1978, Congress amended ILSA and inserted the word "condominium" at only one place in the Act. Section 1702(a)(2) was amended to read as follows:

... the provisions of this chapter shall not apply to ... the sale or lease of any improved land on which there is a residential, commercial, condominium or industrial building, or the sale of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

15 U.S.C. § 1702(a)(2) as amended by P.L. 95–557, § 907(a)(1). In addition to the brief discussion quoted above, the Senate Committee concerned with the amendments said:

Section 715(b)(1) of the bill would amend section 1403(a)(2) [now § 1702(a)(2)] of the act to provide an exemption for the sale or lease of any improved land on which there is a condominium or on which a condominium is to be built within two years. Section 1403(a)(3) presently provides an exemption for land on which there is or will be built within 2 years, a residential, commercial, or industrial building. Present HUD regulations do not provide an exemption for condominiums.

Housing and Community Development Amendments of 1978, Report of the Committee on Banking, Housing and Urban Affairs, United States Senate (Report No. 95–871, U.S.Code Cong. & Admin.News 1978, p. 4773) at page 97. The Conference committee that considered the amendments said:

The Interstate Land Sales Full Disclosure Act is amended to broaden the exemptions to include sale or lease of land on which there is a condominium building on or which a condominium building is to be built within two years..

Public Law 95–557, Summary of the Act, Joint Explanatory Statement of the Managers of the Committee of Conference at page 80.

OILSR has pointed to the inclusion of "condominium" within the exemption as evidence of Congressional intent to include the sale of condominium units within the terms of the Act. It reasons that since sales of land on which there is a condominium, are exempt under the Act, the sale of condominium units in general is therefore included within the Act.

■ This Court finds this reasoning to be incorrect. The Act in general, and this exemption in particular speak only, to sales of land, not sales of condominium units, residences or other improvements to the land. The Section 1702(a)(2) exemption has no application to the sale of a condominium because there is no sale of land within the meaning of the Act. Congress' sole concern has always been only with the buyer obligated to accept title to unimproved land. When the legislature has carefully employed a term in one section of a statute and has excluded it in another, it should not be implied where excluded. *Bott v. American Hydrocarbon Corp.*, 458 F.2d 229 (5th Cir.1972); *J. Ray McDermott & Co., Inc. v. The Morning Star*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972).

Evidence that Congress never intended to include the sale of condominium units within the scope of ILSA can be seen in the legislative history to the 1979 amendments to the Act. In the House report accompanying those amendments, the following was said:

The Committee (Banking, Finance and Urban Affairs) conducted hearings on H.R. 2792, the Condominium Act of 1979 in response to the request of many members of Congress and reports of a significant number of consumer problems and developer abuses with respect to condominium development and conversions ...

More particularly, proponents of the legislation expressed strong concern over what they believe to be special problems which exist in South Florida ... The Committee believes that states and local governments now perceive the need to enact appropriate safeguards and are taking steps to solve these problems. Accordingly, it does not, at this time, see an overwhelming need for establishing national minimum standards of disclosure and protection.

House Report (Banking, Finance and Urban Affairs Committee) No. 96–154, May 15, 1979 (to accompany 3875) at 28, 29, U.S.Code Cong. & Admin.News 1979, pp. 2344–45.

Therefore, Congress has specifically recognized that state condominium acts provide adequate protection. This Court takes judicial notice of the comprehensive protection provided by Florida's consumer oriented condominium act, Fla.Stat. § 718.101.

The very next page of the report concerns the 1979 amendments to ILSA. The juxtaposition of the statement quoted above to the amendments make it obvious that Congress did not consider the sale of condominium units and associated problems to be within the scope of ILSA.

It is clear from the legislative history that although Congress has expressed concern with standards of disclosure and protection in condominium development, it has not acted. The problem has been left for state and local action. Therefore, this Court finds that ILSA does not have any application to the sale of condominium units.

It is also clear from the express language of the exemptions, registration and disclosure requirements that Congress never intended that the Act apply to the sale of condominium units.

The Act was designed to combat certain practices. It imposes disclosure and registration requirements in certain circumstances. The primary concern was the sale of useless parcels of land and its intended meaning of "lots" can be seen in the exemptions provided in the Act.

For example, an exemption was provided "for the sale of lots in a subdivision in which each lot is at least twenty acres." 15 U.S.C. § 1702(b)(4). Another exemption is allowed when there is "the sale or lease of a lot, if a mobile home is to be erected or placed thereon as a residence ..." 15 U.S.C. § 1702(b)(6).

The regulation promulgated pursuant to the Act at 24 CFR § 1710.100–1710.310 contains more than 37 pages of detailed information that must be included in the Property Report to satisfy the registration and disclosure requirements. These requirements have no application to condominium units but the information must be provided with respect to every lot. A few examples illustrate this point:

§ 1710.107  *Risks of Buying Land*

(a) The next page shall be headed 'Risks of Buying Land' and shall contain the paragraphs listed below ...

(1) The future value of any land is uncertain and dependent upon many factors. Do not expect all land to increase in value ...

§ 1710.109(b)  *Title to the Property and Land Use*

(4) Oil, gas, and mineral rights. If oil, gas or mineral rights have been reserved, insert the following statement ...

The (indicate oil, gas or mineral rights) to (state which lots) in this subdivision will not belong to the purchaser of those lots. The exercise of these rights could affect the use, enjoyment and value of your lot.

(f) *Restrictions on the Use of your Lot*

(2) Easements. (i) Are there easements which may have an effect on the purchaser's building or lot use plans (e.g. large drainage easements along lot lines, high voltage electric transmissions lines, pipe lines or drainage easements which encroach upon the building area of the lot or inhibit its use)?

(iii) If the answer ... is in the affirmative, identify the affected lots and state the effect upon the use of the lots.

(g) *Plats, Zoning, Surveying, Permits and Environment*

(2) Zoning. For what purposes may lots be used (e.g. single family homes, camping, commercial?) ...

(3) Surveying. Has each lot been surveyed? ...

§ 1710.115 *Subdivision Characteristics and Climate*

(a) General Topography ... Are there any steep slopes, rock outcroppings, unstable or expansive soil conditions, etc., which will necessitate the use of special construction techniques to build on, or use, any lot in the subdivision? If so, identify the lots affected, and describe the techniques recommended. If any lot in the subdivision have a slope of 20%, or more, include a warning ...

(b) Water Coverage. Are any lots, or portions of any lots, covered by water at any time? What lots are affected? ..

(c) Drainage and fill. Identify the lots which require draining or fill prior to being used for the purpose for which they are being sold.

24 C.F.R. §§ 1710.07(a)(1); 1710.109(b)(4), (f)(2), (g)(2), (g)(3); 1710.115(a), (b), (c). (1981).

It is clear that the Property Report form has nothing to do with condominium units.

■ Although due deference should be accorded statutory interpretation by an agency which has responsibility for administering the statute, statutory construction ultimately is a judicial function. *Aero Mayflower Transit Co. v. I.C.C.*, 686 F.2d 1 (CADC 1982). Courts are the final authority on issues of statutory construction, *Hiatt Grain & Feed, Inc. v. Bergland*, 602 F.2d 929, *cert. den.*, 444 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980), and the meaning of a federal statute is for federal courts to decide. *United Parcel Service, Inc. v. U.S. Postal Service*, 455 F.Supp. 857, affm'd, 604 F.2d 1370, *cert. den.*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1978). The Statement of the United States Supreme Court in the case of *Volkswagenwerk v. FMC*, 390 U.S. 261, 272, 88 S.Ct.

929, 935, 19 L.Ed.2d 1090 (1968) is particularly appropriate:

"the courts are the final authorities on issues of statutory construction ... [citations omitted] ... and 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate where they frustrate the Congressional policy underlying a statute.' *NLRB v. Brown*, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1964)."

It is clear that neither OILSR's opinion nor that of the Delaware Supreme Court in *Nargiz, supra,* is binding on this Court.

■ It is presumed that identical words used in different parts of the same act are intended to have the same meaning. *Fortin v. Marshall*, 608 F.2d 525 (1st Cir.1979); *Hotel Equities Corp. v. Commissioner of Internal Revenue*, 546 F.2d 725 (7th Cir. 1976).

This Court, therefore, must presume that "lot" has the same meaning in 15 U.S.C. § 1703 (requirements respecting sale or lease of lots) 15 U.S.C. § 1702 (exemptions) and 24 CFR § 1710 (reporting requirements). Thus the "lot" referred to in the twenty-five acre exemption is the same "lot" referred to in § 1703(a)(1)—"It shall be unlawful ... with respect to the sale ... of any lot not exempt.."

■ The meaning of one term may be defined by reference to the terms with which it is associated. *General Electric Company v. Occupational, Safety and Health Review Commission*, 583 F.2d 61 (2d Cir.1978). In the context in which "lot" was used in the above described exemption and reporting provisions, "lot" can only mean a parcel of raw land. It makes no sense to include "condominium unit" or "cube of space" within the context in which lot is used in those sections.

■ Interpretations of a statute which would produce unreasonable results should be avoided when alternative interpretations consistent with legislative purpose are available. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 71

L.Ed.2d 748 (1982) *Alabama Power Co. v. Costle,* 636 F.2d 323 (CADC 1979). The absurd result of OILSR's position is clear when "condominium unit" is substituted for the word "lot". It is impossible to think of a twenty-five acre condominium, or of the exemption of a condominium unit if a mobile home will be placed thereon. Under OILSR's interpretation, a seller would have to answer questions regarding zoning or surveying a condominium unit. To define the term "lot" as including a "condominium unit" would be clearly inconsistent with the language and purpose of the Act.

■ This Court finds, therefore, that "lot" does not include "condominium unit" and that the Act has no application to the sale of a condominium unit. All of this is consistent with the purpose and history of the Act, its express language, and basic principles of statutory construction.

■ Assuming arguendo that the terms "lot" and "condominium unit" are synonymous, the transaction in question is still exempt from ILSA pursuant to Section 1710.4(a), thereof.

Section 1710.4(a) of the regulations provide that:

> ... the following transactions are exempt from the registration requirements of the Act ... The sale of lots to a person who is engaged in a bona fide land sales business.

24 CFR § 1710.14(a)(3). This provision is explained further in guidelines which state:

> Lots Sold to Developers—The sale or lease of lots to a person who is engaged in a bona fide land sales business is exempt. For a transaction to qualify for this exemption, the purchaser must be a person who plans to subsequently sell or lease the lot(s) in the normal course of business. The term 'business' refers to an activity of some continuity, regularity and permanency or means of livelihood. The sale or lease of lots to an individual who is buying the property for investment (to be sold at some unforeseeable time in the future) would not be exempt under this provision.

44 Fed.Reg. 24018 (1979). This guideline distinguishes between sales to "individuals", who buy lots for investment and thereby hope to derive some profit from subsequent sale of the lot, and sales to "persons" engaged in the business. Sales to the latter are exempt. Plaintiff, Bruce E. Winter, Michael Arbetter and Gary Stein, general partners of and doing business as Americor Realty Associates, a Florida general partnership, clearly fall within this category. That the plaintiffs general partnership is in the land sales business is evident from its very name. Plaintiffs are, in reality, speculators who assessed the risks involved in the purchase of these units; and entered into a contract causing the defendant to remove the units from the market. Due to a change in the economic climate, the plaintiffs' have decided to bring this action against the defendants rather than bear the burden of their error in predicting the market.

The ILSA was intended by Congress to prevent fraud and deceptive practices in the sales of undeveloped land. The plaintiffs in this action have made no allegation of fraud or misrepresentation, nor have they made any allegation that they failed to obtain the disclosure information required by the ILSA. The plaintiffs simply allege that because they were not given information labeled "property report" they are entitled to rescind their contract.

Plaintiffs, as represented by the style of this cause, are directly involved in real estate enterprises. 24 CFR 1710.14(a)(3) provides an exemption for "the sale of lots to a person who is employed in a bona fide land sale business". A guideline appears at 44 F.R. 24018 which says: "The term 'business' refers to (a) ... means of livelihood". Plaintiffs clearly fall within this definition. The sales to plaintiffs are, therefore, exempt from ILSA.

In conclusion, this Court finds that the Act does not apply to the sale of condominium units. ILSA was enacted to remedy abuses in the land sales business. Disclosure and registration requirements were imposed on sellers of "lots" in a subdivision

under certain circumstances. "Lot" was not defined. Congress has noted the existing state and local regulation of the condominium industry and has expressly refused to establish standards of disclosure and protection with respect to sales of condominium units.

Furthermore, ILSA exempts sales to persons engaged in the land sales business. Plaintiffs, Bruce E. Winter, Michael Arbetter and Gary Stein, general partners of and doing business as Americor Realty Associates, a Florida general partnership, are clearly in the land sales business.

Based upon the foregoing, this Court finds that the transaction in this cause is clearly not governed by the provisions of the Interstate Land Sales Act. Accordingly, it is

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Final Judgment be, and the same is hereby GRANTED. The Defendants are hereby ordered to submit a proposed form of Summary Final Judgment to this Court within ten (10) days of the date of this order.