Larry H. SCHATZ and Ellen H. Schatz, his wife, Plaintiffs,

v.

**JOCKEY CLUB PHASE III, LTD., Defendant.**

**No. 82–589–CIV–EPS.**

United States District Court, S.D. Florida, Miami Division.

March 7, 1985.

---

538

Irving B. Levenson, Miami Beach, Fla., for plaintiffs.

Larry S. Stewart, Miami, Fla., for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

This is an action brought by condominium purchasers seeking the rescission of a contract for the purchase from Defendant of a condominium unit in the Jockey Club Condominiums, Phase III.[1]  The Second

1. In addition to rescission, Plaintiffs also prayed for "the entry of a Preliminary Injunction ... regarding the status quo," (the refund of all

Amended Complaint based jurisdiction on section 1719 of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720, alleging that Jockey Club violated the Act by entering into the contract without providing the purchasers with a printed property report as required by section 1703(c) and section 1707. The Plaintiffs have additionally submitted an affidavit verifying the allegations contained in the Second Amended Complaint. Specifically, Plaintiffs aver that they "never received, and the defendant, Jockey Club Phase III, Ltd., never furnished to them a 'Property Report' of any kind."

■ Jockey Club has not responded with any evidentiary matter which would tend to refute this point.[2] Instead, Jockey Club seems to base its defense on its claim that the Interstate Land Sales Full Disclosure Act is inapplicable to this case. Defendant first claims that the Act does not apply to the sale of condominium units. "[E]ven if the Act were to apply," the Defendant continues, "this sale is exempt because the contract "obligat[es] the seller or lessor to erect [the condominium] within a period of

two years." 15 U.S.C. § 1702(a)(2). The Defendant's final argument is that the purchasers are, in any event, precluded from recovery because "there is no claim of a violation of the Act which has injured Plaintiffs." Thus, the Jockey Club has moved to dismiss the Second Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for "failure to state a claim upon which relief can be granted." [3] Additionally, Jockey Club, in its "Notice of Intent to Rely upon Additional Authority," has renewed its Motion for Summary Judgment.[4]

In response to Defendant's Motion to Dismiss, the Plaintiffs "renew[ed] their previously-filed Motion for Summary Judgment" as well. Because this Court concludes that Jockey Club is not exempt from the provisions of the Act, it was required to furnish a property report to the purchasers in advance of the signing of the contract. Since the uncontroverted facts establish that no property report was furnished, the purchasers have a statutory right to rescission and the refund of their deposits. Accordingly, Plaintiff's Renewed Motion for Summary Judgment is granted.

---

deposits), declaratory relief, interest, attorneys' fees and costs.

**2.** In its Answer and Affirmative Defense, Defendant does state that "[a]ll remaining allegations of the Second Amended Complaint are specifically denied and strict proof is demanded thereof." This denial, however, does not controvert the fact that no property report was furnished. When a motion for summary judgment is made and properly supported as it is here, the "adverse party may not rest upon the mere allegations or denials of his pleading," but instead must respond by affidavit or otherwise setting forth specific facts showing that there is a genuine issue for trial. "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e); e.g., Ferguson v. National Broadcasting Co., 584 F.2d 111 (5th Cir.1978).

Defendant has responded with the affidavit of Marvin M. Green. This affidavit, however, does not controvert the fact that no property report was furnished to the purchasers. The affidavit cannot be construed, even in the light most favorable to the Defendant, as setting forth any facts showing that the report was furnished.

**3.** On January 11, 1985, Defendant filed its Answer and Affirmative Defense. Defendant's first

Affirmative Defense challenged the sufficiency of the Second Amended Complaint. Because no support was given for this challenge, this Court, on January 18, 1985, directed the Defendant to file a Memorandum of Law in Support of Affirmative Defense "1." In this requested memorandum, Defendant moved to dismiss the Second Amended Complaint.

**4.** The Amended Complaint named three Defendants. The first Defendant was Jockey Club Phase III, Ltd. The second Defendant was Sun Bank of Miami, a Florida corporation acting as Land Trustee of Land Trust dated October 13, 1978, and alleged to be the developer pursuant to 15 U.S.C. § 1701(5) of Jockey Club III. The third Defendant was a law firm, Green, Rose, Kahn and Piotrkowski, P.A., a Florida Professional Association acting as Escrow Agent for the purchasers. On July 9, 1984, this Court adopted United States Magistrate Charlene H. Sorrentino's January 17, 1984 Recommendation and granted summary judgment in favor of Sun Bank of Miami and Green, Rose, Kahn and Piotrkowski, P.A. The Plaintiffs were also granted leave of court to amend their Amended Complaint because they "failed to allege that [Jockey Club] committed any actionable wrong under the Act." A Second Amended Complaint was filed on January 30, 1984.

Fed.R.Civ.P. 56(c) provides that summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. *See Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). In assessing whether Plaintiffs have met this burden, this Court must view the evidence introduced and all factual inferences from that evidence in the light most favorable to the Defendant. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 990–91 (5th Cir.1981). All reasonable doubts about the facts should be resolved in favor of the non-moving litigant. *See Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 602 (5th Cir.1981).

In this case, there are no disputed facts. The Jockey Club's position has always been that the instant transaction falls within an exemption to the Act or that the Act is otherwise inapplicable. Jockey Club's arguments will be discussed in turn.

## 1. "THE ACT DOES NOT APPLY TO THIS CASE"

Because this case involves the sale of a condominium unit, Defendant argues that the Interstate Land Sales Full Disclosure Act does not apply in that the Act "by its terms does not apply to condominium units but only to "sales ... of any lots." Defendant cites *Winter v. Hollingsworth Properties Inc.*, 587 F.Supp. 1289 (S.D.Fla. 1984), as authority for this proposition. In *Winter*, Judge Jose A. Gonzalez, Jr. concluded, after a lengthy discussion of the legislative history of the Interstate Land Sales Full Disclosure Act, that "[a] condominium unit when completed is not a 'lot' within the meaning of the Interstate Land Sales Act." [5] With all due respect to Judge Gonzalez, however, this Court must disagree.

It is true that Congress imposed the Act's requirements only on the "sale or lease of lots." 15 U.S.C. § 1703. The Act, however, does not define "lot." But the Code of Federal Regulations does. The word "lot" is defined as "any portion, piece, division, unit or individual interest in land ... if the interest includes the right to the exclusive use of a specific portion of the land." 24 C.F.R. § 1710.1 (1981). Moreover, the Office of Interstate Land Sales Registration ("OILSR"), the federal body charged with administering the Act, has consistently taken the position (with some variation in degree)—first, in the form of a position paper dated August 20, 1972 and later in the form of regulations issued in February 1974—that sales of condominium units are within the coverage of the Act. *See Nargiz v. Henlopen Developers*, 380 A.2d 1361 (Del.1977).

In commenting on this aspect of the definition of the term "lot" as used in the Act, the Administrator of OILSR stated:

> The application of the Act to condominiums has been consistent with OILSR policy since the issue was first raised in 1969. The bases for this position are that condominiums carry the indicia of and in fact are real estate, whether or not the units therein have been constructed. A condominium is accordingly viewed by OILSR as equivalent to a subdivision, each unit being a lot.

38 Fed.Reg. 23866 (Introduction to Regulations).

That this has become the accepted view, see 15A Am.Jur.2d, Condominiums § 20 at 850 (1976); Comment, *Condominium Regulation: Beyond Regulation*, 123 U.Pa.L. Rev. 639, 660 (1975). See also *Inversiones Romar, S.A. v. Jockey Club Phase III, Ltd.*, No. 82–0695–CIV–JE (S.D.Fla. September 18, 1984),[6] a case in which Judge

---

**5.** Judge Gonzalez therefore granted summary judgment in favor of the developer. That decision is currently pending before the United States Court of Appeals for the Eleventh Circuit. The appellate case number is 84–5576. Oral argument has not yet been scheduled.

**6.** In *Inversiones Romar, S.A.*, Judge Eaton granted the Plaintiff's Motion for Summary Judg-

Joe Eaton disagreed with Judge Gonzalez' interpretation of the Interstate Land Sales Full Disclosure Act. Judge Eaton decided:

> Although the Act uses the undefined term "lot", Congress's addition in 1978 of the term "condominium" to the § 1702(a)(2) exemption presupposes that the Act applies to sales of condominium units generally. Study of the legislative history of the 1978 amendment shows no Congressional intent to the contrary. Moreover, condominiums carry the indicia of and in fact are treated as real estate under the laws of Florida, thus making it consistent with the remedial purpose of the Act to view a condominium project as equivalent to a subdivision, each unit being equivalent to a "lot."

This Court sides with Judge Eaton. It has been held that the general purpose of the Act is to prohibit and punish fraud in certain land development enterprises and consequently, it has been said that the Act should be liberally interpreted to attain that end. It should be construed not technically, but flexibly to effectuate its remedial purposes. *See McCown v. Heidler,* 527 F.2d 204 (10th Cir.1975). Therefore, to implement this national public policy of protecting the consumer, this Court chooses to accord the Interstate Land Sales Full Disclosure Act a liberal construction. Accordingly, this Court holds that condominiums, or unit properties, are within the application of the federal statute.

## 2. "JOCKEY CLUB IS AN EXEMPT PROJECT"

■ "[E]ven if the Act were to apply to this transaction," Jockey Club argues, "this action should be dismissed because the Jockey Club condominium project is an exempt project within the terms of the Act." Defendant contends that the instant transaction comes within the exemption which states that the Act's provisions are inapplicable to "the sale or lease of land under a contract *obligating* the seller or lessor to erect such a building thereon within a peri-

od of two years." 15 U.S.C. § 1702(a)(2) (emphasis added).

Jockey Club asserts that paragraph nine (9) of the contract obligated it to complete the condominium within a period of two years. That paragraph provides, in pertinent part that:

> The apartment shall be ready for occupancy approximately on the estimated closing date but not later than two (2) years from the date hereof unless delayed by circumstances or conditions beyond the control of Seller and are legally supportable under Florida law as impossible of performance.

Paragraph nine, however, goes on to limit the purchasers' remedies: "Seller shall not be obligated to make, provide or compensate Buyer for any costs, expenses or losses that may result in a delay in the estimated date of occupancy. Such delays shall not cancel, amend or diminish any of the Buyer's obligations undertaken." In addition, paragraph seventeen (17) states that "Seller's sole liability and obligation to Buyer in the event Seller fails to complete construction or otherwise fails to close this transaction, is the return of the Buyer's deposits together with interest thereon. No action of specific performance of this agreement shall lie in favor of either party." Finally, paragraph eighteen (18) grants the seller the right to reject the buyer for any reason whatsoever, and if so "this contract shall be terminated and of no further force or effect."

Faced with identical arguments and an identical contract, Judge Eaton in *Inversiones Romar, S.A.,* granted summary judgment in favor of the purchasers. Judge Eaton held that "[t]hese provisions of paragraphs 17 and 18 so qualify the seller's promise to erect the unit within two years that it cannot be said that the contract 'obligates' Defendant to do so, within the meaning of the Act." This Court agrees with Judge Eaton. The obligation which a seller must undertake in order to

---

ment. Defendant Jockey Club Phase III, Ltd. filed a Notice of Appeal on December 26, 1984, but moved to dismiss that appeal on February

27, 1985. The eleventh circuit, however, has not yet closed the case.

come within § 1702(a)(2) is to erect the building within two years. Here, the sole obligation which Jockey Club undertook was to give the purchasers an option to cancel the contract and recover the deposit in the event the condominium unit was not ready for occupancy within two years. This obligation, however, is no different than the obligation that the Act itself imposes upon Jockey Club by virtue of its failure to furnish the required property reports to the purchasers.

In *Eaton v. Dorchester Development, Inc.*, No. 81–1615–CIV–EPS (S.D.Fla. November 26, 1984), this Court adopted Judge Daniel Pearson's well-reasoned opinion in *Dorchester Development, Inc. v. Burk*, 439 So.2d 1032 (Fla. 3d DCA 1983). Judge Pearson was quoted as follows:

> Where the seller is obligated to complete by a time certain, the purchaser is not limited, as here, to the remedy of rescission, but he may affirm the contract and seek damages. *See Marshall v. Karl F. Schultz, Inc.*, [438 So.2d 533] (Fla.2d DCA 1983) .... Since the Act is to be construed to effectuate its remedial purpose of protecting the land sale consumer, we can hardly conclude that a contract which has the effect of limiting the purchaser's remedies conforms to the requirements of the Act.

*Id.* at 1034–35 (footnote and citations omitted).

In this case, as in *Burk*, the contract limits the purchasers' ability to enforce the promise to complete the condominium within two years. Therefore, the contract does not comply with § 1702(a)(2) which has been interpreted to require an "uncondi-

tional commitment" to complete the units within two years.[7] Jockey Club is thus not exempt from the provisions of the Interstate Land Sales Full Disclosure Act by virtue of § 1702(a)(2).

### 3. "THERE IS NO CLAIM OF A VIOLATION OF THE ACT WHICH HAS INJURED PLAINTIFFS"

▇ Defendant notes that "Plaintiffs do not claim that they were misled, induced through fraud or 'bilked'. Plaintiffs do not claim that there was a nondisclosure of information which, if disclosed, would have caused them to not enter into the Sales Agreement." Although Defendant is correct, it makes no difference.

Such allegations are not required by the Interstate Land Sales Full Disclosure Act. The Congressional purpose behind the Act was to protect the consumer. This Court is of the opinion that this purpose would be thwarted were this Court to burden the purchaser with the requirement of claiming actual injury when Congress does not require such a claim. *See Inversiones Romar, S.A.*, ("because the Act is a remedial statute, the Court finds Defendant's third contention to be without merit.").

The requirements of the Land Sales Full Disclosure Act are clear. And it is Jockey Club, not the purchasers, that must comply with the requirements. Section 1703(c) and section 1707 obligated Jockey Club to provide the purchasers with a printed property report. Since the uncontroverted facts establish that no property report was furnished, the purchasers are entitled to a judgment as a matter of law. Accordingly,

---

**7.** In its Notice of Intent to Rely Upon Additional Authority, Defendant cites *Mosher v. Southridge Associates, Inc.*, 552 F.Supp. 1226 (W.D.Pa.1982). In *Mosher*, the developer's claim of a § 1702(a)(2) exemption was sustained. But as Judge Eaton pointed out in *Inversiones Romar, S.A.*:

> in *Mosher*, the district court seemingly overlooked a limitation of remedies clause barring specific performance of the contract. To the extent that the result in *Mosher* would have been the same had the court there considered the clause, this Court declines to adopt the reasoning underlying *Mosher*, especially in

light of the fact that the instant contract bars not only an action for specific performance, but a damage action as well.

Inasmuch as Judge Eaton was interpreting the same contract at issue here, this Court chooses to adopt Judge Eaton's persuasive reasoning in rejecting *Mosher*. Instead, this Court agrees with the views of the Third District Court of Appeals in *Burk*, that a developer is "obligated" to complete construction within two years, within the meaning of the Act, only if the purchaser's ability to enforce the promise is not limited by the contract.

Plaintiffs' Motion for Summary Judgment is granted.

Plaintiffs are directed to submit to this Court, within ten (10) days from the date of this Memorandum Opinion and Order, a proposed Final Judgment in accordance with this Memorandum Opinion and Order.