Richard C. BECHERER, et al.,
Plaintiffs–Appellants,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al. Defendants–
Appellees.

No. 96–1669.

United States Court of Appeals,
Sixth Circuit.

Submitted June 4, 1997.

Decided Sept. 22, 1997.

---

Bruce E. Gerstein (briefed), Garwin, Bronzaft, Gerstein & Fisher, New York City, John P. Zuccarini and Elwood S. Simon (briefed), Elwood S. Simon & Associates, Birmingham, MI, for Plaintiff–Appellant.

David C. Andrew (briefed), Baker, Donelson, Bearman & Caldwell, Memphis, TN, Dennis K. Egan (briefed), Barbara L. McQuade, Butzel Long, Detroit, MI, for Defendant–Appellee Merrill Lynch, Pierce, Fenner and Smith, Inc, Martin Cicco.

Jon B. Gandelot, Grosse Pointe Woods, MI, Steve W. Gaskins (briefed), Cosgrove, Flynn & Gaskins, Minneapolis, MN, for Defendants–Appellees Can–American Corporation, Can–American Realty Corporation, Garrett G. Carlson, Graham C. Count, Arni Thorsteinson.

Mary C. Yeager (briefed), Faegre & Benson, Minneapolis, MN, Jon B. Gandelot, Grosse Pointe Woods, MI, Steve W. Gaskins (briefed), Cosgrove, Flynn & Gaskins, Minneapolis, MN, for Defendant–Appellee Shelter Seagate Corp.

Stephen F. Wasinger, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Defendant–Appellee Laventhol & Horwath.

Lawrence G. Campbell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Robert P. Hurlbert, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, IL, for Defendant–Appellee M.A. Mortenson Co.

James R. Case, Kerr, Russell & Weber, Detroit, MI, Melissa M. Horne, Winograd, Shine, Providence, RI, for Defendant–Appellee Winsor/Faricy Architects, Inc.

Laura S. Stafford, Walton & Stafford, Detroit, MI, Jonathan T. Walton, Jr., Detroit, MI, for Defendant–Appellee Trustbank Mortgage Center, Incorporated.

Frank W. Brochert, Plunkett & Cooney, Detroit, MI, Timothy D. Wittlinger, Hill, Lewis, Adams, Goodrich & Tait, Detroit, MI, Lawrence G. Campbell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for Defendant–Appellee Midwest Title Guarantee Company of Florida.

Dennis K. Egan, Barbara L. McQuade, Butzel Long, Detroit, MI, for Defendant–Appellee Frank Lavin.

Before: MARTIN, Chief Judge; RYAN and BATCHELDER, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

On August 21, 1989, six plaintiffs, led by Richard C. Becherer, filed a complaint as a putative class action on behalf of approximately four hundred investors in a non-residential condominium hotel known as The Registry Hotel in Naples, Florida. The complaint alleged, among other things, that SSG,[1] which developed the hotel, and Merrill Lynch, Pierce, Fenner & Smith, the underwriters of the private offering in which interests in the hotel were sold, engaged in a scheme of omissions and misrepresentations to defraud investors in violation of federal securities laws and sections 1703(a)(2) and 1707 of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720 (1996). The complaint also alleged state law breach of contract claims.

The suit has a long and complicated history, much of which is contained in our earlier opinion at 43 F.3d 1054 (6th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 296, 133 L.Ed.2d 203 (1995). The relevant procedural history is as follows: The district court certified the suit as a limited class action for purposes of trying only the breach of contract claims and, in an opinion dated August 7, 1992, awarded the limited class approximately $6.7 million on their breach of contract claims against SSG. The court also dismissed the Becherer plaintiffs' individual

1. For purposes of this opinion, this term includes, among others, Shelter Seagate Corp., the hotel's developer, Can–American Realty Corp., SSG's parent, and Can–American Corp., the parent of Can–American Realty.

Land Sales Act claims. *Becherer I,* 799 F.Supp. 755 (E.D.Mich.1992). On January 10, 1995, this court issued an opinion in which it reversed the district court's dismissal of the Becherer plaintiffs' Land Sales Act claims and remanded those claims for further determination. *Becherer III,* 43 F.3d 1054. On March 13, 1996, the district court once again dismissed the Becherer plaintiffs' Land Sales Act claims against Merrill Lynch and SSG. It is from this opinion and subsequent final judgment that the Becherer plaintiffs now appeal.

The facts relevant to this dispute are largely undisputed. The Registry is a non-residential hotel condominium established pursuant to the Florida Condominium Act, Fla. Stat. ch. 718 (1997). The investors purchased individual condominium hotel interests through an offering underwritten by Merrill Lynch that began on February 1, 1984 and ended on October 31, 1996.

As defined in the offering documents, each hotel interest is a "condominium parcel," owned in fee simple, consisting of (1) a divided interest in a fully furnished condominium hotel unit and (2) an appurtenant undivided interest in the common and commercial areas of the hotel and a right to share in all profits generated by the commercial areas of the hotel.

A Unit Sale Agreement between each investor and SSG governed the sale of the hotel interests. The Unit Sale Agreement and the documents it encompassed stated that each investor would "have a deed to his individual Hotel Unit as his separate property," and that the investor could mortgage or sell the unit separately, but "not free of the obligation to rent it as a hotel room" through SSG. Similarly, offering documents (also incorporated into the Unit Sale Agreement) stated that ownership was in fee simple and units could be conveyed and encumbered as such, but "subject to the provisions of the Condominium Documents" and that each owner "shall be entitled to exclusive possession of his hotel unit," but again, "subject to the provisions of the Condominium Documents."

The offering documents also made clear that each hotel interest was encumbered with several use restrictions and that each investor was dedicating his or her hotel unit for a common business purpose—use as a rental hotel room for transient guests. Investors, largely to comply with tax regulations, were limited to occupying their own hotel units to fourteen days in each calendar year. Moreover, apparently for hotel business purposes, each investor was further limited to occupying his or her unit for no more than seven days during the "Peak Period" of December through April of each year.

Individual investors remained responsible for real and personal property tax bills assessed against the hotel units, could take tax deductions for depreciation, mortgage interest and real estate taxes on the units, and were entitled to the proceeds resulting from the governmental taking of the units by eminent domain. Moreover, each investor retained the right to evict tenants from his or her hotel unit, but this right was, pursuant to the Unit Sale Agreement, assigned to the Registry's management.

Finally, section eight of the Unit Sale Agreement, relating to investors' remedies in the event SSG failed to complete the hotel in accordance with the Unit Sale Agreement, stated that such remedies "shall be either ... a refund ... or ... specific performance."

The district court dismissed the Becherer plaintiffs' Land Sales Act claims, ruling that the hotel units were not "lots" within the meaning of the Land Sales Act, or, in the alternative, that the Becherer plaintiffs' transactions with the Registry were exempt from the Act even if the hotel interests did constitute "lots." To prevail on appeal, the Becherer plaintiffs must successfully challenge both of these findings.

## I.

■ First, the Becherer plaintiffs argue that the district court erred because condominiums fall squarely within the definition of "lots" under the Land Sales Act. They note that the Department of Housing and Urban Development has long considered condominium units to be "lots" within the meaning of the Act. *See Guidelines For Exemptions*

*Available Under the Interstate Land Sales Full Disclosure Act,* 61 Fed.Reg. 13,596, 13,-601 (March 27, 1996). Moreover, courts dealing with this issue have consistently held that a "condominium unit" constitutes a "lot." *See, e.g., Winter v. Hollingsworth Properties, Inc.,* 777 F.2d 1444, 1448 (11th Cir.1985) (acknowledging HUD's definition of lot to include condominium); *Schatz v. Jockey Club Phase III, Ltd.,* 604 F.Supp. 537, 540–1 (S.D.Fla.1985).

While we acknowledge that condominium units are generally considered "lots" within the meaning of the Act, we do not believe that this definition is controlling in the present case. The district court concluded that the hotel interests at issue here were nonresidential condominium units subject to use restrictions, and we agree. While the Unit Sale Agreement and offering documents referred to the hotel interests as "condominiums," substantively the hotel interests are quite different from traditional condominium units. As the district court found, they were largely non-residential (owners had occupancy rights only fourteen days per year) and they were encumbered with a number of use restrictions which made clear that owners were dedicating their units for use as rental hotel rooms. Given the numerous use restrictions and the nonresidential, business purpose of the hotel units, we agree with the district court that the hotel units are not properly considered condominiums, and therefore that precedents holding that condominiums are "lots" within the meaning of the Land Sales Act are not controlling here.

█ The district court also based its holding that the hotel interests were not "lots" on its finding that the investors did not have "exclusive use" of their hotel units. Another portion of the definition of "lot" in the Land Sales Act Guidelines provides:

.Lot means any portion, piece, division, unit or undivided interest in land if such interest includes the right to the exclusive use of a specific portion of the land or unit.
61 Fed.Reg. 13,602.

The Becherer plaintiffs argue that the district court's conclusion on this issue was in error because the "exclusive use" requirement applies only to undivided interests in land. To support their position, the Becherer Plaintiffs point up that the definition of "lot" itself refers to "exclusive use" only in relation to undivided interests. *See* 61 Fed. Reg. 13,602 ("If the purchaser of an *undivided interest or a membership* has exclusive repeated use or possession of a specific designated lot even for a portion of the year, a lot, as defined by the regulations, exists.") (emphasis added).

We cannot accept the Becherer plaintiffs' argument on this point. The Unit Sales Agreement referred to the hotel interests as *divided* interests. Nonetheless, the district court found that the Becherer plaintiffs had purchased *hybrid* interests, and thus applied the exclusive use test of the Guidelines to determine whether the hotel units were properly considered "lots." After careful review of the record, we find no error in the district court's conclusion. Despite the "divided" label, the interests in the units *are* appropriately viewed as "hybrid," particularly in light of the many restrictions placed on their use. The fact that the owners gave up the right to occupy their hotel units for all but fourteen days a year, for instance, strongly mitigates against a finding that such owners were purchasing purely divided property interests. Given their hybrid nature, the exclusive use test should be applied to determine if the hotel interests qualify as "lots."

Applying this test, the district court found that the owners did not have exclusive use of their units, and thus held that the hotel units were not "lots" as defined by the Act. Again, we agree with the lower court. Of course, the Becherer plaintiffs dispute this conclusion and assert that the investors have exclusive use of their units. In support of this position, they point out that the offering documents state that each investor owned his or her unit in fee simple; that it could be conveyed, transferred, or encumbered as such; that each investor received a deed to his or her unit as a "separate property"; that an investor could sell the unit separately; that each investor was responsible for property tax on the unit and could take corresponding tax deductions associated with it; and that each investor was entitled to the proceeds of a governmental taking by eminent domain.

The Becherer plaintiffs also cite a provision of the Land Sales Act Guidelines which states that if a purchaser has exclusive use of a unit "even for a portion of the year," a lot exists. 61 Fed.Reg. 13,602. Since each investor was entitled to stay in his or her unit for fourteen days each year without charge, the Becherer plaintiffs argue that this regulation is satisfied, and the "exclusive use" requirement is met. Finally, the Becherer plaintiffs point up that they had the right to eject persons from their units at all times.

While all this may be true, there was ample evidence of non-exclusive use to support the district court's conclusion. First, investors did not purchase property rights that were free of restrictions and only thereafter choose to use their units for rental purposes. Rather, when the units were purchased, they were already restricted for use as a hotel as a business investment, and thus were never available for use at the discretion of the unit owners.

What's more, the Becherer plaintiffs confuse indicia of ownership with indicia of the right to exclusive use. While investors may own their units in fee simple, the offering documents made clear that there were heavy restrictions on their use of the units: they were allowed only fourteen days per year in their units, and then only if the units were not previously rented; the rights to convey the units and to exclusive possession were expressly made subject to the "provisions of the Condominium documents"; and although owners could sell their units, they could not do so free from the obligation to rent them as hotel rooms.

Finally, the investors' right to eject tenants was, under the offering documents, assigned to SSG, the hotel manager, demonstrating that this right was consistent with a hotel's right to eject its guests, and never truly resided with the unit owners. Under the offering documents, a paying guest cannot be ejected merely because a unit owner wants to use his or her unit. As the district court correctly noted, the investors' financing and ownership of the units is in condominium form, but in reality the units are hotel rooms, designed only for use as hotel rooms, may not be used for residential purposes, and were clearly sold as business investments in a hotel.

Given the extensive evidence of limitations on the investors' right to use and possess their units, as well as evidence that the interests at issue operated more like business investments in a hotel than straightforward condominium purchases, we agree with the district court that the Becherer plaintiffs cannot be said to have "exclusive use" of their units. Thus, under section 1710.1, such units do not constitute "lots" within the meaning the Land Sales Act.

## II.

The Becherer plaintiffs also argue that the district court erred in dismissing their Land Sales Act claims on the ground that the transaction was exempt from the Act. A sale of "lots" is exempt from the Land Sales Act if the seller is contractually obligated to build within two years. The Unit Sales Agreement between SSG and the investors obligated SSG to complete construction within two years, but stated that the "Purchaser's remedy against Seller ... shall be either ... a refund ... or ... specific performance." This Court, interpreting Florida law, held in the prior appeal that the twoyear exemption applied only if the contract provided for the possibility of damages. On remand, the district court held that such a damages remedy would be read into the contract by the Florida courts, and therefore ruled that this transaction was exempt from the Land Sales Act, even if the units were considered "lots" within the definition of the Land Sales Act. The Becherer plaintiffs assert that this conclusion was in error.

We express no opinion on the merits of this argument. Because we have found that the hotel units at issue here were not "lots" within the meaning of the Land Sales Act, the contested exemption is irrelevant, and we need not address its applicability on appeal.

## III.

For the reasons stated above, we AFFIRM the district court's dismissal of the plaintiffs' Land Sales Act claims.