Charles E. ATTEBERRY; Janice Atteberry; Jack L. Avery; Neta Avery; Robert W. Balentine; Pamela Kay Balentine; Glenn E. Banks; Estate of John F. Barnard, Jr., deceased; Betty Jo Barnard; John M. Bates; Susan K. Bates; Sydney F. Baustian; Lovelle Baustian; Patricia J. Beck; Clovia J. Beck; Richard D. Berry; Joyce A. Berry; Jeff D. Blakely; Dorothy R. Blakely; Hubert H. Blanchard; Janive S. Blanchard; David Brewer; Susan Brewer; Anna M. Brizendine; William M. Brumley; Dea Joanna Brumley; Anolia Bynum; Robert Carlisle; Laura Carlisle; Gary D. Clark; Sarah J. Clark; Fred Cobin; Brenda F. Cobin; Bob Collins; Judy Collins; Elsie L. Creswell; Marvin W. Crow; Margaret Crow; Jimmy D. Curtis; Carolyn Curtis; Douglas W. Damron; Heidi W. Damron; Faith V. Dasher; George Davis; Carolyn Davis; Roy E. Davis; Connie W. Davis; Luis Fermin De Orbegozo; Harold R. Dixon; Freda E. Dixon; Robert E. Duncan; Christina E. Duncan; Eugene L. Dunn; Rhonda L. Dunn; The Estate of William C. Durham, deceased; Deann E. Durham Golden; Alfred L. Edwards; Dorothy M. Edwards; The Estate of Louis Evans, deceased; Thelma Evans; Marvin E. Faulkner; Elizabeth Faulkner; N.A. Finch; Naomi Finch; Jimmy L. Frizielle; Flora A. Frizielle; Howard L. Gadberry; Ernestine L. Gadberry; Frank C. Gantz; Belinda Gantz; Lynn L. Gaston; Ann Gaston; James A. Gatliff; Jo Ann K. Gatliff; H. Kelley Geurin, Jr.; Judy Geurin; Virgil Graybill; Rose Marie Graybill; Bruce K. Green; Judy Green; Herb Green; Steven W. Grimes; Carolyn K. Grimes; James D. Haley; Tammi S. Haley; Richard Hall; Mary Lee Hall; Wesley C. Hamilton; Marianne Hamilton; Davis L. Harper; Patti J. Harper; John C. Harrington; Dorothy M. Harrington; Terry Hastings; Jan K. Hastings; Andy L. Hatley; Shirley Hatley; Henry Heidelberger; Betty G. Heidelberger; Charlie W. Hollis; Victoria Gail Hollis; Dennis W. Hood; Sharon Hood; William A. Hughes; Carolyn Squires; L.D. Immel; Ina Immel; Gregory G. Jackson; William L. Johnson; Debbie J. Johnson; William B. Johnston, Jr.; Frances M. Johnston; Lois M. Jones; Ronnie D. Jones; Carolyn G. Jones; Ben F. Jordan; Marie T. Jordan; Joseph W. Kelley; Glenda F. Kelley; Heide Killough; Dwayne Lawrence; Stephanie Lawrence; Joseph A. Lercher; Lisa G. Lercher; Billy R. Lewis; Kathryn E. Lewis; Jerald L. Maggard; Anita Maggard; John D. Main; Clarice Main; Billy J. Martin; Scottie Martin; Jim Mashburn; Margie Mashburn; Billie J. Massey; Schevaun Massey; Kenneth E. McDearmon; Carol A. McDearmon; Jerry McDearmon; Clifton Mears; Luvenia Mears; Robert D. Merritt; Lynne Merritt; Brian K. Miller; Renee Miller; David A. Mitchell; Joanne Mitchell; Thomas C. Moore; Catherine Moore; Harrell G. Newman; Lenora G. Newman; Margaret J. Omholt; Riley O'Neal, Jr.; Patricia O'Neal; Shirley B. Paige; Larry R. Pasley; Alicia Pasley; Philip H. Peters; Alison Peters; Judy Pierson; John P. Pope; Metta W. Pope; Douglas W. Postell; Paulette E. Postell; Robert A. Potillo; Joy A. Potillo; Robert L. Redmon; Carolyn A. Redmon; J. Guilford Rice; C. Patricia Rice; Dennis A. Ritter; Elizabeth A.

Ritter; David Rivera; Daphne Rivera; Norman C. Rogers; Caroline Rogers; Harold G. Ruple; Edward J. Sample; Barbara Ann Sample; Andrew B. Setliffe; Dorothy Setliffe; Allan D. Sharp; Helen E. Sharp; John L. Shelton; Susan T. Shelton; Dorothy J. Smith; Gary D. Smith; Margaret L. Smith; Michael R. Smith; Sheena D. Smith; Robert E. Smith; Sandra F. Smith; Webster D. Smith, Jr.; Sharon R. Smith; Michael L. Smyers; Jeanne M. Smyers; Allen Soo; Evelyn Soo; Marcus G. Speer; Patricia H. Speer; William R. Stewart; Rosemary Stewart; Michael R. Swedenberg; Terri A. Swedenberg; Hubert H. Temme; June Temme; Michael G. Temme; Margaret L. Temme; Billy Tucker; Betty Tucker; James R. Wage; J.B. Wage; Ronald L. Walker; Patricia A. Walker; Phillip J. Wallace; Suson E. Wallace Cox; Albert Weaver; Lillie Weaver; E. Philip Webb; Mary Ann P. Webb; Robert L. Weyant; Dorothy Weyant; Claude Wheeler; Mollie Wheeler; Harry Willcockson; Shelby Willcockson; Marsha E. Williams; James F. Wood; Dorothy M. Wood; David Woody; Beverly Woody; Albert R. Wright; Jane N. Wright, Plaintiffs–Appellants,

Steven Barham; Kathleen Barham; Joseph L. Bolden; Barbara J. Bolden; Charles Breckinridge; Stephanie Breckinridge; Johnny E. Brian; Carolyn Pasierb; Howard L. Cartwright; Winifred Cartwright; James E. Chrestman, Jr.; Jewell Chrestman; The Estate of J.E. Chrestman, III, deceased; Anna Chrestman; Marcus E. Copeland; Claire Copeland; Kenneth Coyle; Aline Coyle; Ben Dickinson; Jackie Dickinson; Randy Edmonson; Mae Dean Edmonson; Paul L. Evans, Sr.; Mary Evans; Rayburn Gunter; Shelah Gunter; Herman Harlan; Eunice Harlan; John W. Jackson; Kara L. Jackson; Seburn Jones; Elsie Jones; Robert E. Lea; Nancy Lea; Michael Miller; Carole Tante; Melvin Moore, Jr.; Shirley Moore; Tony M. Pipkin; Janice G. Pipkin; John Pollock;

Barbara Pollock; Raymond Ross; Mark A. Rutherford; Chris A. Rutherford; Leon F. Stamps; Van Dora Stamps; Gary Vanderslice; Mary Vanderslice; James R. Weddle, Jr.; Glenda Young, Intervenor–Plaintiffs–Appellants.

v.

MAUMELLE COMPANY; Dehaven Todd & Company; Michael G. Todd; John W. Dehaven, Defendants–Appellees.

Ronald D. Watson; Ronald Smith; Deborah Smith; Movants,

Robert D. Holloway, Objector.

United States of America, Amicus Curiae,

Ronald D. Watson; Deborah Smith; Ronald Smith, Intervenors.

No. 94–2349.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided July 11, 1995.

Rehearing Denied Aug. 24, 1995.

James Gerard Schulze, Little Rock, AR, argued, for appellant.

Jeffrica Jenkins Lee from the Civ. Div. of the Dept. of Justice, argued (Frank W. Hunger, Asst. U.S. Atty., on the brief), on behalf of amicus, U.S.

George F. Pike, Jr., North Little Rock, AR, argued (John T. Harmon, on the brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

BOWMAN, Circuit Judge.

This is an appeal from an order of the District Court [1] granting summary judgment and dismissing a claim brought under the Interstate Land Sales Full Disclosure Act (the Act), 15 U.S.C. §§ 1701–20 (1988 & Supp. V 1993), and also dismissing the plaintiffs' supplemental state law claims. We affirm.

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, presiding pursuant to the consent of the parties in accordance with 18 U.S.C. § 636(c) (1988).

## I.

The plaintiffs are some 178 individuals and couples seeking to represent a class of approximately two thousand purchasers who bought lots from The Maumelle Co. (Maumelle) in Maumelle, Arkansas, over a multi-year period. While possessed of neither Florida swampland nor Arizona desert, each of the plaintiffs is nevertheless strong in the belief that his or her lot is not a happy one, and that the company sold these parcels of real estate "pursuant to a promotional plan that involved fraudulent misrepresentations." Brief of Appellant at 12. After a state court judgment in favor of lot owners Glenn and Cavonna Eskola was reversed and remanded for transfer to the chancery court due to lack of jurisdiction, *Maumelle Co. v. Eskola,* 315 Ark. 25, 865 S.W.2d 272, 275 (1993), the plaintiffs brought the present lawsuit in the District Court. As summarized by the court, their federal complaint alleges that

> they were induced to purchase property in the subdivision by false promises made by the sales agents, in violation of the [Act], and that defendants failed to provide a property report at the time the agreement to purchase the property was signed, also in violation of the Act; that the representations made by defendants' agents constituted fraud, deceit and misrepresentation; that the defendants are liable for breach of contract in that most of the improvements promised have not been completed; and that the actions of defendants constitute intentional infliction of emotional distress.

*Soo v. Maumelle Co.,* Civ. No. LR–C–92–439, Memorandum and Order at 1 (E.D.Ark. April 15, 1994) (citation omitted). The complaint thus includes federal claims based on the Act as well as supplemental state law claims.

Defendants moved for summary judgment, contending that the Act does not apply to them by reason of the exemption set forth in 15 U.S.C. § 1702(a)(2) (1988), which provides:

(a) **Sale or lease of lots generally**

Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—

.    .    .    .    .

(2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

Defendants argued that they are protected by this exemption inasmuch as, subject to specified conditions, Maumelle was contractually obligated to each plaintiff to build a house on that plaintiff's lot within two years of the date of purchase.

In opposing defendants' motion for summary judgment and seeking summary judgment for themselves, plaintiffs contended that the contract provision at issue (the building provision) is insufficient to make the § 1702(a)(2) exemption available to defendants. Plaintiffs put forward two reasons for the nonapplicability of this exemption: (1) defendants used the building provision for the purpose of evading the Act and (2) the building provision did not unconditionally obligate defendants to build houses for the buyers within a period of two years.

The District Court, finding no genuine issues of material fact, held as a matter of law that the conditions in the building provision were merely "reasonable steps in the actual construction process" and "that the building provision in the sales contract at issue ... was sufficient to create the exemption relied upon by defendants." Memorandum and Order at 5. Similarly, the court held that plaintiffs had not come forward with evidence requisite to show that defendants had adopted the building provision for the purpose of evading the Act. Accordingly, the court granted defendants' motion for summary judgment, denied plaintiffs' motion for summary judgment, and denied plaintiffs' other pending motions as moot. The plaintiffs appeal, contending that the District Court erred in holding that defendants are entitled to summary judgment on the basis of the § 1702(a)(2) exemption. Plaintiffs essentially reiterate the arguments they made before the District Court.

## II.

Plaintiffs' first contention is that error occurred when the District Court concluded that the building provision of the sales contract was sufficient to bring defendants within the ambit of the § 1702(a)(2) exemption from the requirements of the Act. The building provision is found in the "Special Conditions" section of the contract, and in one representative contract reads as follows:

6. Construction of Residential Home. Within 180 days of the date hereof, Buyer agrees to provide Seller with detailed plans and specifications of a home (the "Improvements") for construction by Seller on the Lot, consistent with the Bills of Assurance, and otherwise meeting the architectural requirements of the subdivision. Once Buyer's plans and specifications have been determined by Seller to meet the architectural requirements of the subdivision, Buyer shall arrange the construction financing necessary by reason of this agreement to pay the purchase price of the Lot and the Improvements set forth below (or, if no construction financing is required by Buyer to pay for the improvements, Buyer shall furnish Seller with satisfactory evidence of their ability to pay the purchase price of the improvements). Upon Buyer providing to Seller satisfactory evidence of construction financing, Seller agrees to construct on the Lot a residential home in conformity with plans and specifications presented by Buyer prior to two years from the date of this Real Estate Sale and Construction Contract. Buyer shall have the right to specifically enforce this Agreement against Seller or seek damages or any other remedies provided by law for breech [sic] of this Agreement by Seller. The purchase price for the Improvements being constructed by Seller shall be the sum of costs incurred by Seller plus 10% shall be due from Buyer to Seller monthly during construction. The costs of Seller are all costs incurred by Seller for the following items: [listing ten cost items including wages, materials, taxes, and so forth].

Real Estate Sale and Construction Contract and Installment Note between the Maumelle Co. and Clyde E. Byrd and Karen L. Byrd, Special Conditions ¶ 6 (Aug. 25, 1990). Plaintiffs, supported by the Department of Justice as *amicus curiae*, urge that the building provision's conditions precedent to the seller's obligation to build a house on the buyer's lot defeat the seller's eligibility for the § 1702(a)(2) exemption.

In making this argument, the government's *amicus* brief relies extensively on guidelines regarding the exemption provisions of the Act issued by the Department of Housing and Urban Development in 1979. These guidelines are not mentioned in plaintiffs' briefs to this Court and plaintiffs do not appear to have placed any reliance on them at all, either here or in the District Court. We express doubt whether on appeal it is proper for an *amicus curiae* to urge reversal of a lower court on the basis of authority on which the party the *amicus* is supporting has placed no reliance at any stage of the litigation. We nevertheless have considered the guidelines, and we conclude that they are entirely consistent with the District Court's reading of the governing statute. Therefore, as the guidelines lead us toward affirmance rather than reversal of the District Court's decision, we need not and do not pause to survey the procedural difficulty alluded to above. The guidelines that the government has flagged for us provide in pertinent part as follows:

If a seller (or developer) is relying on this exemption and the residential, commercial, condominium or industrial building is not complete, the contract must specifically obligate the seller to complete the building within two years. If the contractual obligation is not present, the sale is not exempt. The two-year period begins on the date the purchaser signs the sales contract. The use of a contract that obligates the buyer to build within two years would not exempt the sale.

HUD's interpretation of what constitutes a two-year obligation to construct a building relies on general principles of contract law in deciding whether or not the seller has, in fact, an obligation to erect a building within two years. Provisions for purchaser financing and remedies clauses are

matters to be decided by the parties to the contract under the laws of the jurisdiction in which the construction project is located.

However, the contract must not allow nonperformance by the seller at the seller's discretion. Contracts that permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality.... Similarly, contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct. HUD's position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated....

Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected....

Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control.

24 C.F.R. pt. 1710 app. A at IV(b) (1994). It is immediately apparent that while these guidelines say that the seller's obligation to build must be specific, they do not say, or even hint, that the obligation must be unconditional. Neither, of course, does the statute. Even so, plaintiffs and the *amicus curiae* argue strenuously that the building provision in the present case injects contingencies into the building process that negate the operation of the § 1702(a)(2) exemption. "[T]he Defendants' duty to build on the lot was contingent upon the buyer submitting plans which satisfied the Defendants. It was also contingent upon the buyer paying all of the seller's costs and expenses plus a surcharge of ten percent (10%)." Brief of Appellant at

20. Taking the second part first, it seems to us that this "contingency" must be characterized as a "[p]rovision[ ] for purchaser financing" and thus, according to the HUD guidelines, a matter "to be decided by the parties to the contract under the laws of the jurisdiction in which the construction project is located." 24 C.F.R. pt. 1710 app. A at IV(b). Thus the guidelines themselves adopt the position that a provision for purchaser financing is not the sort of contingency that defeats the statutory exemption. Moreover, plaintiffs do not suggest that construction contracts based on cost plus ten percent are in any way contrary to Arkansas law.

The submission of architectural plans is a closer call. It is not correct, however, as plaintiffs argue, that approval of the plans is at the unfettered will of the seller. According to the language of the building provision, the buyer submits plans "consistent with the Bills of Assurance, and otherwise meeting the architectural requirements of the subdivision." Thus the contract creates an objective standard by which the plans the buyer submits are to be evaluated by the seller. The question is whether this allows "nonperformance by the seller at the seller's discretion." 24 C.F.R. pt. 1710 app. A at IV(b). We think it does not. Arkansas case law is clear that contracts are to be construed reasonably so as to carry out the intentions of the parties. *Eason v. Simon,* 180 Ark. 885, 23 S.W.2d 986, 987 (1930); *Singer Sewing Mach. Co. v. Brewer,* 78 Ark. 202, 93 S.W. 755, 756 (1906). Further, when conditions are placed on a contract, the parties have a duty to make a reasonable effort and to accept reasonable terms in order to satisfy these conditions. *See Betnar v. Rose,* 259 Ark. 820, 536 S.W.2d 719, 723 (1976). The building provision therefore cannot properly be regarded as an invitation for the seller to evade its contractual obligation at will. This conclusion is supported by the fact that the building provision gives the buyer the remedy of specific performance as an alternative to damages or other remedies for breach of contract, thus emphasizing that the provision contemplates a binding obligation on the part of the seller.

In sum, we agree with the trial court that "the 'conditions' cited by plaintiffs [are] reasonable steps in the actual construction process" and do not "negate the rights of the purchasers." Memorandum and Order at 5. We conclude that the building provision is sufficient to make defendants eligible for the § 1702(a)(2) exemption.

### III.

■ Plaintiffs contend that, even if the building provision is sufficient to qualify defendants for the § 1702(a)(2) exemption, the trial court erred when it found there was not substantial circumstantial evidence that the defendants adopted the building provision of the contract with the intent to evade the Act. Section 1702(a) states in pertinent part that the provisions of the Act shall not apply to the exceptions enumerated, "[u]nless the method of disposition is adopted for the purpose of evasion of this chapter." The District Court noted that both parties have agreed that this is a case of first impression in any court as regards interpretation of this phrase. *See* Memorandum and Order at 7.

The statutory language at issue refers to evasion "of this chapter," and thus, we conclude, to bad-faith use of the enumerated exceptions in order to evade the Act's purpose. Sister circuits have variously defined this purpose as "to prohibit and punish fraud in ... land development enterprises," *McCown v. Heidler,* 527 F.2d 204, 207 (10th Cir.1975), or "to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property," *Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 99 (5th Cir.1978). Even a good-faith use of the enumerated exceptions arguably could be viewed as an evasion of the Act, but we think the phrase "adopted for the purpose of evasion of this chapter" must be read more narrowly and confined to use of the enumerated exceptions with fraudulent intent. Accordingly, we hold plaintiffs must show that, in including the building provision in the standard sales contract, defendants acted with fraudulent intent, *i.e.,* that at the time of contracting they did not intend for Maumelle to fulfill its obligations under the building provision.

■ The case of *Maumelle Co. v. Eskola,* 865 S.W.2d 272, in which the jury found defendants guilty of fraudulent practices, was reversed on jurisdictional grounds. It therefore is a nullity, and does not have any preclusive effect in the present action. As to the record in the present proceeding, and as the District Court found, the testimony given by defendant Jay DeHaven at his deposition that he sold property under an exception to the Act to allow it to be priced more competitively, standing alone, does not constitute evidence that he fraudulently attempted to evade the Act. The testimony of Maumelle employees Judy Pickens and Mary Peyton, given under oath at the *Eskola* trial and interpreted by plaintiffs to show a fraudulent intent, indicated that Maumelle, although it did not construct any houses, worked closely with lot owners in planning houses and obtaining bids for their construction. Similarly, the *Eskola* testimony of lot owner Jeffrey Ellison that Maumelle did not comply with the building provision actually shows a more complex series of events in which the company's attempt to assist in planning was stymied by subsequent disagreements. Testimony by the building inspector for the city of Maumelle as to the number of houses constructed was viewed by the District Court, correctly we think, as not probative of fraud.

> This number necessarily depended upon the number of persons who wanted to build and who submitted plans. There is no evidence in this record, other than Mr. Ellison's situation, that defendants discouraged building or refused to build homes in Maumelle. On the other hand, all of the defendants testified they encouraged building and that home construction added to the value of the properties.

Memorandum and Order at 9. Finally, the testimony by Glenn Eskola at his trial that Maumelle's salesmen removed the building provision from his contract in order to close the sale, while not discussed by the District Court, does not appear to be probative of fraud. We conclude, as did the District Court, that plaintiffs have failed to show there is a genuine issue for trial on the issue of fraudulent intent. *See* Fed.R.Civ.P. 56(c). We concur with the District Court that the

evidence submitted by plaintiffs in opposition to defendants' motion for summary judgment is not probative on the issue of evasion.

### IV.

The judgment of the District Court is affirmed.