Brian K. BARRY, Plaintiff,

v.

MIDTOWN MIAMI NO. 4, LLC, a Florida limited liability company, Defendant.

Case No.: 08–20049–CIV.

United States District Court, S.D. Florida.

June 30, 2008.

Brian K. Barry, Miami Beach, FL, pro se.

Ronald M. Rosengarten, Greenberg Traurig, Miami, FL, for Defendant.

## *ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

PAUL C. HUCK, District Judge.

THIS CAUSE is before the Court upon Plaintiff Brian K. Barry's Motion for Summary Judgment, filed March 27, 2008 [D.E. # 17], and Defendant Midtown Miami No. 4, LLC's Cross–Motion for Summary Judgment, filed May 1, 2008 [D.E. # 24]. Midtown Miami responded to Barry's Motion, and Barry replied. Likewise, Barry responded to Midtown Miami's Motion, but Midtown Miami did not file a Reply. Barry filed his original Complaint on January 8, 2008 [D.E. # 1] and then filed an Amended Complaint on February 25, 2008 [D.E. # 6]. In his Amended Complaint, Barry alleges the following two counts: (1) violation of 15 U.S.C. § 1703(a)(1) of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), and (2) breach of contract. In his Motion for Summary Judgment, Barry seeks Summary judgment on Count I, while in its Cross Motion for Summary Judgment, Midtown Miami seeks summary judgment on Count I, and urges the Court to decline to exercise supplemental jurisdiction over Count II.

## I. BACKGROUND [1]

This is a case about a real estate transaction and a developer's required disclosures and potential exemptions from those disclosures under the ILSFDA. Midtown Miami is a Florida limited liability company and the developer of the Four Midtown Miami Condominium ("Condominium"), in which Barry, a Miami attorney, agreed to buy Unit 810 ("Unit"). The parties signed the contract ("Purchase Agreement") on January 18, 2005 for a purchase price of $375,000, of which Barry paid a deposit of $75,000. Midtown Miami did not provide Barry with a property report before signing the purchase agreement or file a statement of record with the Secretary of the Department of Housing and Urban Development ("HUD").

The relevant provisions of the Purchase Agreement are as follows:

- Paragraph 7 of the Purchase Agreement provides, in pertinent part: "Seller agrees to substantially complete construction of the Unit in the manner specified in this Agreement, by a date no later than two (2) years from the date Buyer signs this Agreement, subject, however, only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the Building is being erected (the "Outside Date").

- Paragraph 7 of the Purchase Agreement also provides, in pertinent part: "Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least ninety (90%) of the Residential Units in the Condominium."

- Paragraph 9 of the Purchase Agreement provides, in pertinent part: "Closing does not have to be scheduled within two (2) years of the date of Buyer's execution of this Agreement, but Seller agrees that closing shall be scheduled no later than six (6) months following the Outside Date."

- Paragraph 26 of the Purchase Agreement is a broad savings clause.

1. The material facts discussed here are undisputed.

- Paragraph 33 provides: "Whenever this Agreement requires Seller to complete or substantially complete an item of construction, that item will be understood to be complete or substantially complete when so complete in Seller's opinion. Notwithstanding the foregoing, however, neither the Unit nor the Building of which the Unit is a part will be considered complete or substantially complete for purposes of this Agreement unless the Unit (and such portion of the building intended to be used exclusively by the Buyer) is physically habitable and usable for the purpose for which the Unit was purchased."

- Paragraph 37 provides: "The liability of the Seller under this Agreement or any amendment or any instrument or document executed in connection with this Agreement shall be limited to and enforceable solely against the interest of the Seller in the Condominium, and not against any other assets of Seller or any partner of Seller (or their officers, principals, directors, employees, managers, members or agents)."

In August 2007, Barry demanded the return of his $75,000 deposit because the Unit was not completed within the two-year time frame stipulated by Paragraph 7 of the Purchase Agreement. Midtown Miami refused to return Barry's deposit, claiming that the delay in construction was excused under the contract.

As a result of these disagreements, Barry initiated this lawsuit alleging that Midtown Miami violated 15 U.S.C. § 1703(a)(1) by failing to furnish the appropriate disclosures under the ILSFDA—namely, providing a property report to Barry as required by § 1703(a)(1)(B), or registering a statement of record with HUD as required by § 1703(a)(1)(A).[2] Barry further claims

that Midtown Miami breached the contract by not substantially completing construction on the Condominium within two years. Barry is seeking rescission of the Purchase Agreement and recovery his deposit, plus interest. Midtown Miami argues that it was exempt from providing the required disclosures under 15 U.S.C. § 4702(a)(2) of the ILSFDA—a contention Barry opposes—and thus is entitled to summary judgement on Count I. Midtown Miami also argues that the Court should decline to exercise supplemental jurisdiction over the state law contract claim (Count II).

## II.  DISCUSSION

### A.  *Standard*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to

---

2.  Midtown Miami admits that it did not provide these disclosures.

present affirmative evidence in ·order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (holding that conclusory allegations and conjecture cannot be the basis for denying summary judgment). ·

### B. *ILSFDA*

██ Congress passed the ILSFDA in 1968 "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." *Winter v. Hollingsworth,* 777 F.2d 1444, 1447 (11th Cir.1985). The ILSFDA "imposes detailed disclosure requirements upon land developers and prohibits fraud in interstate land transactions." *Armbrister v. Roland Int'l Corp.,* 667 F.Supp. 802, 811 (M.D.Fla.1987). Not every sale or lease of lots is subject to the ILSFDA, however. Section 1702 provides several circumstances under which particular land sales are exempt from the Act. For example, the ILSFDA does not apply to those sales of improved land where the seller is obligated to complete construction within two years. Specifically, the "two year completion" exemption provides that the Act applies:

(a) Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to—

(2) ... the sale or lease of land under a contract *obligating the seller or lessor to erect such a building thereon within a period of two years.*

15 U.S.C. § 1702 (emphasis added). The issue before the Court therefore is whether the terms of the Purchase Agreement actually "obligated" Midtown Miami two complete construction within two years, triggering the exemption from the required disclosures.

### C. *Analysis—Count I*

Midtown Miami contends that this exemption applies to the contract at issue in this case because the Purchase Agreement contains the following language: "Seller agrees to substantially complete construction of the Unit in the manner specified in this Agreement, by a date no later than two (2) years from the date the Buyer signs this Agreement." It asserts that this clause plainly illustrates that it "agreed to substantially complete construction of the unit within two years from the date the contract was signed," and thus that the contract falls within the "two-year completion" exemption provided for in the ILSFDA.

Barry, however, contends that Midtown Miami is not exempt from the requirements of the ILSFDA because the language of the Purchase Agreement does not unconditionally obligate Midtown Miami to complete the Condominium in two years. Barry points to several clauses in the Purchase Agreement that it argues serve either to limit Barry's remedies or to make illusory Midtown Miami's obligation to complete the Condominium in two years.

#### 1. Limiting Barry's Remedies

Barry argues that because the Purchase Agreement limits the remedies available to him in case of Midtown Miami's breach, Midtown Miami was not really "obligated" to build within two years. Barry argues that Paragraph 7 contains a presale contingency clause [3] that serves to eliminate his

---

**3.** That portion of Paragraph 7 states as follows: "Notwithstanding the foregoing or any

other Contrary provision of this Agreement,

right to specific performance. Several courts, including this one, have addressed this issue and concluded that unless specific performance is available as a remedy for breach, the "obligation" to build is illusory. *See Schatz v. Jockey Club Phase III, Ltd.,* 604 F.Supp. 537, 541–42 (S.D.Fla.1985); *Aboujaoude v. Poinciana Dev. Co. II,* 509 F.Supp.2d 1266, 1271 (S.D.Fla.2007). But Barry fails to point to any provision in the contract that similarly limits his right to any number of remedies, ranging from specific performance to damages, like the provisions in *Schatz* or *Aboujaoude.* For example, in *Schatz,* a provision in the contract there explicitly stated that "No action of specific performance of this agreement shall lie in favor of either party." 604 F.Supp. at 541. Likewise, in *Aboujaoude,* the contract limited the buyers' "sole remedy" to the return of their deposit and did not permit the remedy of specific performance. 509 F.Supp.2d at 1271–72. Here, however, specific performance, damages, and the return of Barry's deposit are apparently available and unlimited.

In addition, the HUD Guidelines explicitly sanction this kind of clause, stating: "Also permissible, in the case of multi-unit construction, is a clause conditioning the completion of construction or closing of title on a certain percentage of sales of other units." *See Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, available at http://www.hud.gov/offices/hsg/sfh/ils/ilsexemp.cfm* [hereinafter "HUD Guidelines"]. The Court therefore cannot accept Barry's argument that the provision requiring a certain percentage of sales so restricts his potential remedies in case of a breach that Midtown Miami's obligation to build is illusory.

## 2. A Seller's Two–Year Building Obligation Need Not be Unconditional.

Barry also argues that Midtown Miami's obligation to build the Condominium within two years was illusory. He argues that, under Florida law, a seller's obligation to complete construction within two years must be completely unconditional. He points out that the provision in Paragraph 7, excusing Midtown Miami's performance based on "delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected," impermissibly conditions performance on various possible delays. In response, Midtown Miami argues that the contract provision tracks the language used in the HUD Guidelines, which permit a conditional obligation in certain circumstances.

■■■ The interpretation of a federal statute is governed by federal law. *See In re Prudential of Fla. Leasing. Inc.,* 478 F.3d 1291, 1298 (11th Cir.2007). In addition, state law governing contract interpretation and enforcement will impact whether a given contract "obligates" the seller to build the condominium. *See Markowitz v. Northeast Land Co.,* 906 F.2d 100, 105 (3d Cir.1990); *Rondini v. Evernia Properties, LLLP,* 2008 WL 793512, No. 07–81077–CIV, *2 (S.D.Fla. Feb. 13, 2008). While the HUD Guidelines provide that extensions for "events or occurrences such as acts of God, casualty losses, or material shortages are generally permissible" and do not render illusory the obligation to build within two years, *see* HUD Guidelines, the Florida Supreme Court has said

Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding

contracts to sell at least ninety percent (90%) of the Residential Units in the Condominium."

that for the exemption to apply, "the obligation [to build] must be unrestricted." *Samara Dev. Corp. v. Marlow,* 556 So.2d 1097, 1100 (Fla.1990).

Faced with this conflicting authority, federal courts have not uniformly interpreted whether an agreement must contain an absolutely unconditional promise to build within two years under 15 U.S.C. § 1702(a)(2). *Compare Fortunato v. Windjammer Homebuilders, Inc.,* 2006 WL 208777 at \*3 (M.D.Fla.2006) ("Under Florida contract law, there must be an unconditional guaranty of completion within two years.") *with Stein v. Paradigm Mirsol, LLC,* 551 F.Supp.2d 1323, 1329 (M.D.Fla.2008) (explicitly rejecting the Florida Supreme Court's suggestion in *Marlow* that, to be exempt from the ILSFDA, a contract must unconditionally obligate the seller to build within two years). But many federal courts that have confronted this issue have concluded that the obligation to build within two years does not have to be unconditional. As a court from the Middle District of Florida recently put it:

> The Court concludes that a contract 'obligates' the completion of a condominium within two years when that commitment to do so is real and not illusory. Another court has referred to this concept as a time commitment that 'unequivocally requires' timely construction, or as a 'true obligation' or an 'unwavering obligation.' To 'obligate' the timely completion does not require that the contract be unconditional, so long as the condition(s) does not render the apparent obligation illusory. A two-year completion provision is not required to be an unconditional guarantee which imposes strict liability for noncompliance. Such a strict liabili-

ty for completion is not necessary to prevent the fraud against which the ILSFDA was intended to guard. The Court therefore rejects plaintiffs' argument that any condition on performance renders an agreement illusory.

*Stein,* 551 F.Supp.2d at 1328–29 (internal citations omitted); *see also Atteberry v. Maumelle Co.,* 60 F.3d 415, 420 (8th Cir. 1995) ("It is immediately apparent that while these guidelines say that the seller's obligation to build must be specific, they do not say, or even hint, that the obligation must be unconditional. Neither, of course, does the statute."). The Court further notes that HUD interpretations of the Act are to be afforded "great deference." [4] *Winter,* 777 F.2d at 1448. The Court thus finds that the conditions placed by Midtown Miami on the two-year obligation to build do not, by their very existence, nullify the applicability of the § 1702(a)(2) exemption.

### 3. Midtown Miami's Two–Year Completion Obligation is Not Illusory.

Finding that a promise to build within two years need not be unconditional, the Court now turns to whether the actual conditions on the obligation operating in the Purchase Agreement here nullify the applicability of the § 1702(a)(2) exemption. The Court finds that they do not.

Barry argues that the second clause of the first sentence of Paragraph 7 serves to eviscerate the first clause, which requires Midtown Miami to substantially complete construction within two years. Paragraph 7 states:

> Seller agrees to substantially complete construction of the Unit in the manner

---

**4.** Generally, the HUD Guidelines provide the following: "Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected."

specified in this Agreement, by a date no later than two (2) years from the date the Buyer signs the Agreement, subject, however, *only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the Building is being erected* (the "Outside Date").

Pl.'s Stmt. Of Undisputed Facts, ¶ 11 (emphasis added). This language mirrors the language used in the HUD Guidelines, which provide the following: "Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected."

District courts' analysis of this issue has been far from uniform. For example, many courts have held contract provisions excusing fulfilling the obligation based on impossibility of performance to be valid. *See Schatz,* 604 F.Supp. at 541. In *Rondini,* for example, the Court held exempt under § 1702(a)(2) a developer that conditioned its two-year obligation on "delays caused by Acts of God, the unavailability of materials, strikes, other labor problems, governmental orders or other events which would support a defense based upon impossibility of performance beyond [defendant's] control." 2008 WL 793512, at *2. In arriving at its decision, the court there noted that the HUD Guidelines are entitled to great deference. *Id.* at *3.

Other courts, however, have not permitted developers to take advantage of the § 1702(a)(2) exemption because of overly broad provisions excusing performance within two years. In *Stein,* for example, the Court held that a provision extending the two-year period "for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the

Seller" is "broad enough to seriously undermine the obligation" to complete construction within two years. 551 F.Supp.2d at 1330. The court found that the contractual provision did not "limit the permissible delays to those justifiable under an impossibility of performance, but allows exclusions for far less compelling reasons ...." *Id.* Likewise, in *Harvey v. Lake Buena Vista Resort, LLC,* 568 F.Supp.2d 1354, 1364 (M.D.Fla.2008), the court found the defendant's "ability to extend the completion date 'by reasons of delays incurred by circumstances beyond [Defendant's] control,' including the very broad category of 'any other grounds cognizable in Florida contract law [sic] as ... frustration of performance, including without limitation, delays occasioned by wind, rain, lightning, and storms' makes [Defendant's] two-year completion obligation illusory."

Despite the uneven treatment these cases have received, the Court is hesitant to find that Midtown Miami failed to legitimately obligate itself to a two-year time frame when the limitations on its excuses were coextensive with those recommended by the HUD Guidelines. First, a provision that tracks the language used in the HUD recommendations cannot properly be regarded as illusory or as "an invitation for the seller to evade its contractual obligation at will." *Atteberry,* 60 F.3d at 420. Second, requiring a developer to complete the building within two years absent an extremely narrow set of permissible excuses is not necessary to guard against the fraud the ILSFDA was designed to prevent. Third, the Court's interpretation of Midtown Miami's obligations under the Purchase Agreement is consistent with generally accepted principles of contract law regarding delivery of performance. The Court therefore finds that Midtown Miami's use of the HUD Guidelines' language triggers the § 1702(a)(2) exemption insulating it from liability based upon its

failure to furnish the appropriate disclosures under the ILSFDA. The Court thus must deny Barry's Motion for Summary Judgment on this basis and must grant Midtown Miami's Motion for Summary Judgment on Count I.

### 4. Barry's Other Arguments

Barry makes several other arguments, but all are unavailing and require only brief treatment. First, Barry argues that the closing period described in Paragraph 9 of the Purchase Agreement eviscerates Midtown Miami's obligation to complete building the Condominium within two years. Paragraph 9 of the Purchase Agreement provides, in pertinent part: "Closing does not have to be scheduled within two (2) years of the date of Buyer's execution of this Agreement, but Seller agrees that closing shall be scheduled no later than six (6) months following the Outside Date." Barry argues that the extra six months to close on the Unit serves to extend Midtown Miami's obligation beyond two years and thus render its obligation illusory. But, as Midtown Miami argues in its brief, the § 1702(a)(2) exemption requires the developer to "erect... a building"—not close on the property—within two years to take advantage of the exemption. The statute is completely silent about the timing of closing on a particular unit, and Barry cites to no authority to support his assertion that the closing period is included in the two-year completion obligation. The Court thus cannot grant him summary judgment on this basis.

Second, Barry in his Amended Complaint claims that Paragraph 33 makes illusory Midtown Miami's two-year completion obligation. That paragraph defines "substantial completion" under the Purchase Agreement. The Court has considered this argument and does not agree that this definitional paragraph—which explains that a Unit must be "habitable and usable"—has any effect on Midtown Miami's two-year completion obligation.

Third, Barry argues that Paragraph 37 impermissibly restricts his remedies because it limits his recovery only to Midtown Miami's interest in the Condominium. The Court finds this argument unavailing because Barry still has specific performance, the return of his deposit, and damages available to him so as not to render Midtown Miami's two-year completion obligation illusory.

Fourth, Barry argues that the Purchase Agreement contains a prohibited savings clause. While Barry might be correct, the Court need not evaluate the legality of the savings clause because it has already determined that Midtown Miami complied with the requirements of the § 1702(a)(2) exemption. The savings clause is thus irrelevant to the exemption analysis and is certainly not an independent basis on which the Court can grant Barry summary judgment.

### D. *Analysis—Count II*

In its cross Motion for Summary Judgment, Midtown Miami moves the Court to decline to exercise supplemental jurisdiction over Barry's state law breach-of-contract claim. Because the Court is granting Midtown Miami's Motion for Summary Judgment on Barry's federal ILSFDA claim in Count I. the Court will not retain jurisdiction to hear Barry's state law breach-of-contract claim in Count II. Accordingly, Count II is dismissed as well.

### III. CONCLUSION

For the reasons stated above, it is hereby

ORDERED AND ADJUDGED that Barry's Motion for Summary Judgment on Count I is DENIED; Midtown Miami's Motion for Summary Judgment on Count I is GRANTED. The Court will not retain

jurisdiction over the state claim alleged in Count II, and that Count is hereby DISMISSED WITHOUT PREJUDICE. All other motions are denied as moot. The Clerk shall close the case.